## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION FILE NO. 1:25-cv-04023-SDG |
| Plaintiff | : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| ATLANTA MEDICAL DAY SPA AND SURGERY CENTER, LLC | : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

_____/

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

### <u>INTRODUCTION</u>

Defendant Atlanta Medical Day Spa and Surgery Center, LLC's ("Atlanta Day Spa" or "Defendant") has already filed an Answer (ECF No. 9). Yet nearly two months later, it now seeks dismissal under Rule 12(b). This maneuver is procedurally improper and legally untenable. Rule 12(b) explicitly states that a motion to dismiss "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added). The Eleventh Circuit has been unequivocal: a Rule 12(b) motion filed after an Answer is a "nullity." *Leonard v. Enter. Rent-A-Car*, 279 F.3d 967, 971 n.6 (11th Cir. 2002).

Compounding matters, Defendant ignores Plaintiff's previously filed motion

to dismiss its counterclaim (ECF No. 10), which Defendant never opposed. Against this procedural backdrop, Defendant's invocation of *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), only underscores the weakness of its motion. *Salcedo* has been expressly overruled by the Eleventh Circuit sitting en banc in *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023).

In short, Defendant's motion is procedurally barred, doctrinally outdated, and substantively unsupported.

## **BACKGROUND**

On July 21, 2025, Plaintiff Chet Michael Wilson filed this action alleging Defendant Atlanta Medical Day Spa and Surgery Center, LLC engaged in unlawful telemarketing text messages in violation of the TCPA (ECF No. 1). Plaintiff alleged his number was registered on the National Do Not Call Registry yet Defendant continued to send marketing messages to his cell phone without consent. Service was perfected, and Defendant filed its Answer on August 14, 2025 (ECF No. 9), asserting counterclaims.

On August 16, 2025, Plaintiff moved to dismiss the counterclaim under Rule 12(b)(6) (ECF No. 10). Defendant never filed any opposition. Nearly two months later, on October 3, 2025, Defendant filed the present motion to dismiss Plaintiff's complaint (ECF No. 12), despite already having answered.

## <u>LAW AND ARGUMENT</u>

**I.    Defendant's Motion to Dismiss Is Procedurally Barred**

Rule 12(b) is unequivocal: "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Once an Answer is filed, a Rule 12(b) motion is no longer permitted. The Eleventh Circuit has stated directly: "a Rule 12(b) motion filed after the filing of an answer is a nullity." *Leonard*, 279 F.3d at 971 n.6.

District courts in this Circuit consistently enforce that rule. See *Neelu Aviation LLC v. Boca Aircraft Maint., LLC*, No. 18-cv-81445, 2019 WL 4345685, at *2–3 (S.D. Fla. Sept. 12, 2019) (rejecting motion to dismiss for lack of jurisdiction filed after an answer); *Brisk v. City of Miami Beach, Fla.*, 709 F. Supp. 1146, 1147 (S.D. Fla. 1989) (holding that "once the defendants filed their answer, it became procedurally impossible for the Court to rule on the motion to dismiss"); *Maldonado v. Johnson*, 2023 U.S. Dist. LEXIS 239377, at *5 (S.D. Fla. Dec. 29, 2023) (same).

Here, Defendant answered the Complaint (ECF No. 9). Its later-filed Rule 12(b) motion (ECF No. 12) is therefore a procedural nullity that should be denied outright.

**II.    Defendant's Reliance on *Salcedo* Is Foreclosed by *Drazen***

Defendant argues that Plaintiff lacks standing under *Salcedo*. That reliance is misplaced because *Salcedo* has been abrogated. In *Drazen v. Pinto* ("Drazen I"), 74 F.4th 1336, 1342 (11th Cir. 2023), the Eleventh Circuit held en banc that "a plaintiff who receives even a single unwanted telemarketing text message suffers a concrete injury." The court explained that the harm "shares a close relationship with the harm underlying the tort of intrusion upon seclusion" and therefore satisfies Article III standing. Id. at 1345–46.

In granting rehearing en banc, the Eleventh Circuit explicitly addressed "the vitality of *Salcedo's* standing holding" in TCPA cases. *Drazen v. Pinto* ("Drazen II"), 106 F.4th 1302, 1308 n.12 (11th Cir. 2024). The court rejected *Salcedo's* reasoning and held that even a single unwanted text is a concrete injury:

> The question at the core of this appeal is whether the plaintiffs who received a single unwanted, illegal telemarketing text message suffered a concrete injury. To answer that question, we consider whether the harm from receiving such a text message shares a close relationship with a traditional harm. The plaintiffs contend that it does—namely, with the harm that underlies a lawsuit for the common-law claim of intrusion upon seclusion. We agree.
>
> Both harms reflect an intrusion into the peace and quiet in a realm that is private and personal. A plaintiff who receives an unwanted, illegal text message suffers a concrete injury.
> *Drazen v. Pinto*, 74 F.4th 1336, *3-4 (11th Cir. 2023).

*See also Simpson v. J.G. Wentworth Co.*, No. 8:23-cv-00152-KKM-AEP, 2024 WL 248337, at *8 (M.D. Fla. Jan. 23, 2024) (relying on *Drazen I* to uphold standing).

Thus, Defendant's jurisdictional argument is foreclosed by binding Eleventh Circuit precedent.

### III.    Defendant's "Professional Litigant" Attacks Are Irrelevant and Misleading

Defendant attempts to deflect from its own unlawful conduct by labeling Plaintiff a "professional litigant." Such ad hominem attacks are not a defense to liability and have no place in Rule 12(b)(6) analysis. The relevant question is whether Plaintiff has plausibly alleged violations of the TCPA — not whether Defendant approves of his decision to vindicate his statutory rights.

The reality is that Plaintiff's experience underscores the very reason Congress enacted the TCPA. Plaintiff's telephone number ends in "9999," a sequence that telemarketers frequently dial either randomly or because it is supplied by others who wish to avoid further solicitation. Companies, including Defendant here, routinely accept numbers provided by consumers without verifying that the number actually belongs to the purported customer. As a result, Plaintiff's number is targeted by unsolicited texts and calls with disproportionate frequency.

The TCPA was designed precisely for these circumstances: to provide individuals recourse when they are subject to unwanted, repeated intrusions into their privacy. See *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023)

(recognizing that even a single unwanted text message constitutes a concrete injury because it invades the recipient's peace and seclusion). Congress chose to empower consumers directly, rather than leaving enforcement exclusively to regulators, so that repeated violators could not escape accountability.

Courts have consistently recognized that whether a plaintiff has brought prior suits is irrelevant where, as here, the allegations describe real intrusions caused by repeated unlawful telemarketing. See, e.g., *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191–92 (10th Cir. 2021) (plaintiff's standing not diminished by her pursuit of claims under the TCPA; the question is whether she alleged concrete injury).

"[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (denying similar motion to dismiss in TCPA case); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018)

("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

Merely because Mr. Wilson identified the company calling him illegally deprives him of standing no less "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying MSJ in TCPA case related to a similar standing argument). While the Defendant is "understandably frustrated" by the fact they are being sued, he is doing "exactly what Congress intended—enforcing the law." *Id.* Congress was well aware of this possibility when it passed the TCPA, and no general rule requires plaintiffs who prove their cases to end up worse off than before the defendant injured them. Thus, courts reject such irrelevant attacks on plaintiffs who bring multiple actions and engage in investigative tactics to stop illegal telemarketing:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as *Stoops* endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and

plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (cleaned up). Like the defendants in

*Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to

sue under the TCPA to those who are *ignorant* of their right to sue under the

TCPA." *Id.* "The Constitution requires no such result." *Id.*

Thus, Defendant's attempt to cast Plaintiff's statutory enforcement as

opportunistic only highlights the importance of the TCPA. Far from undermining

standing or plausibility, Plaintiff's repeated exposure to unlawful texts

demonstrates why Congress armed consumers with a private right of action.

Congress expressly anticipated that consumers would bring repeat litigation

to deter unlawful conduct; the fact that Plaintiff has done so underscores—not

undermines—the TCPA's effectiveness.

## IV. Plaintiff Adequately States a TCPA Claim Under Rule 8 and Text Messages are Calls under the TCPA.

Defendant also contends that Plaintiff's allegations are "conclusory" and fail

under *Iqbal* and *Twombly*. Not so. The Complaint alleges:

- Plaintiff's cellular number was registered on the National Do Not Call Registry (ECF No. 1 ¶ 32).
- Plaintiff received multiple unsolicited telemarketing text messages from Defendant (ECF No. 1 ¶¶ 36–41).
- Plaintiff never provided prior express consent or had any business relationship with Defendant (ECF No. 1 ¶¶ 30–31, 45).

These are factual allegations, not legal conclusions. Taken as true, they state

a plausible claim for relief under the TCPA. Courts regularly find such allegations sufficient. See *Simpson*, 2024 WL 248337, at *8. Defendant's insistence on "proof" of registry or opt-out procedures misunderstands pleading standards. Rule 8 requires allegations, not evidentiary proof. Plaintiff has provided detailed factual allegations that, if true, entitle him to relief.

Based on the straightforward allegations, the only possible meaning the Defendant could have to the failure to plead essential elements is that texts are not calls under the TCPA. However, this is not the case.

The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC— by regulation—has interpreted the word 'call' to include text messages."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Hall v. Smosh Dot Com, Inc.*, 72

F.4th 983, 986 (9th Cir. 2023); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact.").

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text

messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to

another").[1] More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). To be sure, as Defendant emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly

---

[1] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). That breadth reflects Congress's choice to regulate solicitations by effect (commercial encouragement) rather than by transmission modality. See 47 U.S.C. § 227(a)(4); *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025).

### b. Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

 It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[2]

---

[2] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English

Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not only traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to encompass both).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[3]

Neighboring provisions confirm the same usage. See § 227(b)(1)(A) (using

---

Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

[3] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

"call" for transmissions to cellular telephones and paging services). To the extent *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764 (C.D. Ill. July 21, 2025), suggested otherwise, it relied on contemporary parlance rather than the term's ordinary meaning at enactment—an approach the Supreme Court has warned against. See *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[4] And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

        **c.  *Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.***

---

[4] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC:

Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395.  Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone

numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This Court should do the same.

As explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this Court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's

position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

Indeed, just last month, *Bosley v. A Bradley Hospitality LLC d/b/a La Mesa Miami*, Case No. 25-cv-22336-BLOOM/Elfenbein, 2025 U.S. Dist. LEXIS 183986 (S.D. Fla. Sept. 18, 2025) confirmed that "a text message constitutes a 'call' under the TCPA." *Id.*

## V. There is No Duty to Mitigate Damages under the TCPA, which makes sense since the Plaintiff took the Affirmative Step of Registering his Number on the National Do Not Call Registry Already.

Defendant argues Plaintiff should have "mitigated" damages by taking additional steps. This argument has been uniformly rejected. As courts have recognized, statutory damages under the TCPA are mandatory and not subject to mitigation. See *N.L. v. Credit One Bank, N.A.*, 2018 WL 5880796, at *4 (E.D. Cal. Nov. 8, 2018) (rejecting mitigation argument); *Ahmed v. HSBC Bank USA, N.A.*, 2017 WL 5720548, at *2 (C.D. Cal. Nov. 6, 2017) (same).

The reasoning is straightforward: each unauthorized text is a discrete statutory violation. See *Holtzman v. Turza*, 2010 WL 3076258, at *5 (N.D. Ill. 2010) ("Mitigation of damages is not a defense under the TCPA, and each instance of a violation is independently actionable."); *State ex rel. Charvat v. Frye*, 868 N.E.2d 270, 275 (Ohio 2007) (no duty to mitigate).

Accordingly, Plaintiff had no duty to reduce Defendant's liability by taking steps beyond those he already took of registering his number on the DNC list. The statutory damages Congress prescribed are available for each violation, regardless of mitigation.

## CONCLUSION

Defendant has already filed an Answer. Its attempt to dismiss Plaintiff's Complaint under Rule 12(b) months later is procedurally barred, a nullity under binding Eleventh Circuit precedent, and cannot be entertained. Even if the Court were to look past that defect, Defendant's arguments fail on the merits. Plaintiff has alleged a straightforward violation of the TCPA: his number was registered on the Do Not Call Registry, he received multiple unsolicited text messages, he replied "STOP" but the messages continued, and he never gave consent or had any business relationship with Defendant. Those allegations are more than sufficient under Rule 8, and the Eleventh Circuit has confirmed that even a single unwanted text message constitutes a concrete injury.

The TCPA exists precisely to protect individuals like Plaintiff from repeated, unlawful intrusions into their privacy. Defendant's reliance on discredited precedent, misplaced attacks on Plaintiff's character, and meritless defenses like "failure to mitigate" cannot erase the plain statutory violations alleged here.

For all of these reasons, Defendant's Motion to Dismiss (ECF No. 12)

should be denied in its entirety.

Dated: October 4, 2025

> PLAINTIFF, individually and
> on behalf of others similarly situated,
>
> By:
>
> */s/ Anthony I. Paronich*
> Anthony I. Paronich (*pro hac vice*)
> Paronich Law, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> [o] (617) 485-0018
> [f] (508) 318-8100
> anthony@paronichlaw.com

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with

14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

> */s/ Anthony I. Paronich*
> Anthony I. Paronich (*pro hac vice*)